ROY BELFAST, JR.
REG NO.: 76556-004
U.S. PENITENTIARY LEE
POST OFFICE BOX 305
JONESVILLE, VIRGINIA, 24263-0305
Criminal case no.: 1:06-cr-20758-CMA

FILED by PG D.C.
JUL 17 2017
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

Date: July 11th, 2017

CHIEF JUDGE OF THE SOUTHERN DISTRICT OF FLORIDA
WILKIE D. FERGUSON J.S. COURTHOUSE
400 North Miami Ave.
Miami, Florida, 33128

Re: MISCONDUCT COMPLAINT
Cert No. By which document was sent:
Background:

To: CHIEF JUDGE OF THE SOUTHERN DISTRICT OF FLORIDA

Petitioner was indicted on 8 counts, found guilty with judgment issued on Jan 9th 2009, to count 1, 18 U.S.C. § 2340A(c) a conspiracy to commit torture 240 mths; count 2, conspiracy to use, carry, and possess firearms during and in relation to a crime of violence, 18 U.S.C. § 924(o), 240 mths, count(s) 3, 4, 5, 6, 7, 18 U.S.C. § 2340A each; count 8, 18 U.S.C. § 924(c), using carrying and possessing a firearm during and in relation to a crime of violence. Petitioner filed a timely petition and was denied on direct appeal. A 2255 motion was filed by petitioner, and subsequently denied.

**FACTS:**

Petitioner recently received declaration by A.U.S.A.Karen Rochlin found in Document 673, 4/21/2016 of docket sheet which states, found on page 20 of 25. see: Exhibit 1, Prosecutors Declaration:

> "The trial record is devoid of any statement that any conspirators were citizens of or present in the United States. The defendant, if he did not know the information already, received disclosure of the identity of his conspirators well in advance of trial, yet raised no objection, meritorious or not, based on the status of his conspirators. The record from his trial refutes any claim of government misrepresentation or other misconduct."

This declaration by Prosecutor proves the unconstitutional application of 18 U.S.C. § 2340A(c)a count 1 of the second superseding, which lead to hypothetical jurisdiction, violation of petitioners fundamental rights, issuance of "advisory opinion"; 5th, 14th, 8th, 13th Sec 1, Executive Order 13107; 18 U.S.C. § 4001(a); 18 U.S.C. §§ 241 and 242; 18 U.S.C. § 4; 18 U.S.C. § 2; 28 U.S.C. § 530B. The declaration suggests misconduct at the grand jury level, and perjury on the affidavits used to initiate, investigate, and try petitioner on indictment no.: 1:06-cr-20758-CMA. see: Exhibit 2, Violation of Statutes.

18 U.S.C. § 2340A(b)(1)(2) jurisdiction section states: (b) Jurisdiction. There is jurisdiction over the activity prohibited in subsection (a) if -- (1) the alleged offender is national of the United States; or (2) the alleged offender is present in the United States, irrespective of the natiionality of the victim or alleged offender. (see: Exhibit 3, Statute 18 U.S.C. § 2340A, et seq.).

In addition based upon, recent FOIA request under no.: 2016-02166; 4/5/2016; provided petitioner with no evidence to prove a violation 18 U.S.C. § 2340A(c) before the grand jury and at trial. (see: Exhibit 4, FOIA responses and documents released.). Finally a recent ruling by Eleventh Circuit Court of Appeals Judge Martin under scored further misconduct in regards to the drafting and issuance of the super-seding and second superseding indictments regarding counts 2 and 8, respectively. Judge Martin states:

"There is an additional reason I believe Mr. Belfast's application should be granted. As best I can tell, Mr. Belfast's superseding indictment listed both his substantive torture counts and his conspiracy to commit torture count as possible predicate convictions for supporting his convictions under §924(c)(and the accompanying sentencing provisions, §924(o)), which criminalizes carrying a firearm during a "crime of violence." In United States v. Schlei, 122 F.3d 944(11th Cir.1997), we held that "[a] count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." Id. at 977. "Basic to criminal law principles is the concept that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses." United States v. Mothersill, 87 F.3d 1214, 1218(11th Cir.1996)(quotation omitted). if conspiracy to commit torture and the substantive offense of torture are separate offenses, then a §924(c) charge that relies on conspiracy must likewise be distinct from a §924(c) charge that relies on torture. By listing these two offenses in the same Count, Mr. Belfast's indictment commits the error Schlei was concerned about. "A duplicitous count poses three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissiblity of evidence." Schlei, 122 F.3d at 977. Mr. Belfast's case demonstrates the dangers that lurk. Mr. Belfast may indeed have used a gun at some point in time during the conspiracy, but never during the substantive torture offense. However, "because the jurors have two crimes to consider in a single count, they may convict [on the §924(c) offense] without reaching a unanimous agreement on [which crime Mr. Belfast "used" a firearm during]." § 142 Misjoinder, Duplicity, and Multiplicity, 1A Fed.Prac.&Proc.Crim § 142(4th ed.). A general verdict of guilty "will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other. This uncertainty could prejudice defendant in sentencing [and] appellate review." Id. Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his § 924(c) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Belfast's indictment is written, all we can do is guess. We simply cannot know on which companion conviction the jury relied. It may well be true that Congress intended torture (and conspiracy to commit torture) to count as crimes of violence under § 924(c). And, as I've said, these crimes certainly meet the § 924(c) residual clause definition because they "involve [] a substantial risk that physical force against the person or property of another may be used." But, assuming Johnson applies to § 924(c), we are now faced with applying a statutory definition half of which is unconstitutional. The Supreme Court has told us how to determine whether a crime meets the "elements clause" definition-- "by look[ing] only to the facts that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." Descamps v. United States, 133 S.Ct.2276, 2287(2013)quotation omitted). In so doing, we "must presume that the conviction rested upon nothing more than the least of the acts criminalized." Moncrieffe v. Holder, 133 S.Ct.1678,1684(2011)(quotation omitted).

On its face, whether torture or conspiracy to commit torture is a "crime of violence" may seem easy. And, when the residual clause still operated as a catch-all, it certainly was. But, by denying this application, the majority has prevented a district court from looking into this question for the first time and denied us, a Court of Appeals, the opportunity to review the district court's resolution. I respectfully dissent.

• A person accused of crime is presumed to be innocent until the contrary is proven, and such guilt can be shown only by proof beyond a reasonable doubt. Lilienthal v. United States, 97 U.S. 237, 24 L.ed. 901; Potter v. United States, 155 U.S. 438, 39 L.ed.214, 15 S.Ct. 144; State v. Hardin, 19 N.C. (2 Dev.& B.L.) 407; 4 Wigmore, Ev.pp. 350-372; Holmgren v. United States, 217 U.S. 509, 524, 54 L.ed. 861, 868, 30 S.Ct. 588, 19 Ann.Cas. 778; Sykes v. United States(C.C.A. 8th) 204 F. 909.

• A defendant accused of crime is entitled to a fair and impartial trial. Graves v. United States, 150 U.S. 118, 37 L.ed. 1021, 14 S.Ct. 40; Wilson v. United States, 149 U.S. 60, 37 L.ed.650, 13 S.Ct. 765; Hall v. United States, 150 U.S. 76, 37 L.ed. 1003, 14 S.Ct. 22; People v. Slover, 232 N.Y. 264, 133 N.E. 633; People v. Esposito, 224 N.Y. 370, 121 N.E. 344; People v. Malkin, 250 N.Y. 185, 164 N.E. 900; Johnson v. United States(C.C.A. 7th) 215 F.679, L.R.A.1915A, 862; 3 Wigmore, Ev. § 1808. It is only when the facts so clearly appears that an error challenged did not prejudice,

•Berger v. United States, 79 L.E.D., 1314, 295 US 78, "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

• As the Eleventh Circuit has explained on numerous occasions, federal courts possess the authority to dismiss an indictment because of prosecutorial misconduct, including abuse of the grand jury process. United States v. White, 846 F.2d 678, 693(1988); United States v. Sims, 845 F.2d 1564, 1569(1988); United States v. Blalock, 844 F.2d 1546, 1550(1988); United States v. Pabian, 704 F.2d 1533, 1536(1983). While dismissal is an "extreme sanction which should be infrequently utilized," Sims, 845 F.2d at 1569, it nevertheless can be exercised if the violation warrants it. See United States v. Morrison, 449 U.S. 361, 365, 66 L.Ed.2d 564, 101 S.Ct.665(1981)(recognizing federal court's power to dismiss indictment if remedy is tailored to injury suffered). Because Ms. Stanford and Mr. McClendon's right to seek dismissal of any indictment provides them with an adequate remedy at law, this Court should not exercise anomalous jurisdiction in the matter presently before the Court.

• The Eleventh Circuit, in addressing the issue of prosecutorial misconduct, in U.S. v. Reed, 887 F.2d 1398(11th Cir.1989), cert. denied. 493 U.S.1080, 107 L.Ed.2d.1041, 110 S.Ct. 1136(1990), stated as follows: Prosecutorial Misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused. United States v. Odom, 858 F.2d 664(11th Cir.1998); United States v. Collins, 779 F.2d 15209(11th Cir.1986). A prejudical remark may be rendered harmless by a curative instruction. United States v. Lichenstein, 610 F.2d 1272(5th Cir.), cert. denied., 407 U.S.907, 100 S.Ct.2991, 64 L.Ed.2d.856(1980). Reed, 887 F.2d at 1402.

• Qualified immunity insulates government officials from personal liability for actions within their discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d. 396, 410(1982). Whether an official is entitled to qualified immunity requires two inquires: (1) whether the law clearly established at the time of the alleged misconduct; and (2) whether the alleged misconduct violated that clearly established law. Id. Generally, a government official is entitled to qualified immunity as a matter of law when she acts within her authority. However, is she acts unlawfully, she must act in good faith. In other words, qualified immunity will protect her if a reasonable person in her position would not have known at the time that her conduct was unlawful. Rich v. Dollar, 841 F.2d 1558, 1563(11th Cir.1988)(citing Harlow v. Fitzgerald, 457 U.S. at 800, 102 S.Ct. at 2728, 73 L.Ed.2d at 399).

• To find "prosecutorial overreaching,' the Government must have, through "gross negligence or intentional misconduct,' caused aggravated circumstances to develop which "seriously prejudice(d) a defendant' causing him to "reasonably conclude that a continuation of the tainted proceeding would result in a conviction." United States v. Kessler, 530 F.2d 1246, 1256(5th Cir.1976)(citation and footnote omitted). See United States v. Gaultney, 606 F.2d 540(5th Cir.1979); United States v. Garza, 603 F.2d 578(5th Cir. 1979).

• To prove a prosecutorial misconduct claim, Petitioner must show that the challenged conduct was both improper and prejudiced his substantial rights. Sexton v. Howard, 55 F.3d 1557, 1559(11th Cir.1995).

United States Attorney Manual 9-11.010 Introduction "In discharging these responsibilities the prosecutor must be scrupulously fair to all witnesses and must do nothing to inflame or otherwise improperly influence the grand jurors. 9-11.233 "It is policy of the department of justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person

**[Fed.R.Crim.P.4(a)]**

**[Fed.R.Crim.P.5.1(a)]**

9-27.200 "The probable cause standard is the same standard as that required for the issuance of an arrest warrant of a summons upon a complaint F.R.Crim.P.4(a) for a magistrates decision to hold a defendant to answer in the district court F.R.Crim.P.5.1(a) and is the minimal requirement for indictment by a grand jury. 9-27.230(2) "It is important that limited Federal resources not be wasted in prosecuting inconsequential cases or cases. . .".

**CONCLUSION:**

Petitioner requests a misconduct investigation on the A.U.S.A.'s involved in the prosection of my case, who have been responsible for 11 yrs of unlawful incarceration, fraud, misappropriations, waste, and abuse.

Sincerely,

Roy Belfast

Roy Belfast, Reg no.: 76556-004

unnecessary or irrelevant facts, the defendant baselessly asserts that agents, prosecutors, and others have misrepresented those facts.

His assertions are contradicted by the record from his trial, where prosecutors, during direct examinations in the government's case-in-chief, elicited testimony that certain unindicted conspirators were foreign nationals. The trial record is devoid of any statement that any conspirators were citizens of or present in the United States. The defendant, if he did not know the information already, received disclosure of the identity of his conspirators well in advance of trial, yet raised no objection, meritorious or not, based on the status of his conspirators. The record from his trial refutes any claim of government misrepresentation or other misconduct. Similarly, the defendant offers no documentation or factual support for speculation that any misrepresentation occurred before the grand jury. Moreover, a conviction at trial cures any defect in the indictment process. *United States v. Mechanik*, 475 U.S. 66, 73 (1986); *United States v. Flanders*, 752 F.3d 1317, 1333 (11th Cir. 2014)(even if allegations of deception before the grand jury were true, petit jury's verdict rendered it harmless). The United States rejects any assertion of misconduct before the grand

§ 241. Conspiracy against rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch 645, § 1, 62 Stat. 696; April 11, 1968, P. L. 90-284, Title I, § 103(a), 82 Stat. 75; Nov. 18, 1988, P. L. 100-690, Title VII, Subtitle B, § 7018(a), (b)(1), 102 Stat. 4396; Sept. 13, 1994, P. L. 103-322, Title VI, § 60006(a), Title XXXII, Subtitle A, § 320103(a), Subtitle B, § 320201(a), Title XXXIII, § 330016(1)(L), 108 Stat. 1970, 2109, 2113, 2147; Oct. 11, 1996, P. L. 104-294, Title VI, §§ 604(b)(14)(A), 607(a), 110 Stat. 3507, 3511 .)



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

§ 4001. Limitation on detention; control of prisons

(a) No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

(b) (1) The control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws, the Classification Act, as amended and the applicable regulations.

(2) The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation.

(June 25, 1948, ch 645, § 1, 62 Stat. 847; Sept. 25, 1971, P. L. 92-128, § 1(a), (b), 85 Stat. 347 .)



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

(June 25, 1948, ch 645, § 1, 62 Stat. 684; Oct. 31, 1951, ch 655, § 17b, 65 Stat. 717 .)



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 4. Misprision of felony

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

(June 25, 1948, ch 645, § 1, 62 Stat. 684; Sept. 13, 1994, P. L. 103-322, Title XXXIII, § 330016(1)(G), 108 Stat. 2147 .)



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# PART 2635 -- STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

5 U.S.C. 7301, 7351, 7353; 5 U.S.C. App. (Ethics in Government Act of 1978); E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

---



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## SUBPART A -- GENERAL PROVISIONS

### § 2635.101 Basic obligation of public service.

(a) Public service is a public trust. Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee shall respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

(b) General principles. The following general principles apply to every employee and may form the basis for the standards contained in this part. Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether their conduct is proper.

(1) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws and ethical principles above private gain.

(2) Employees shall not hold financial interests that conflict with the conscientious performance of duty.

(3) Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

(4) An employee shall not, except as permitted by subpart B of this part, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties.

(5) Employees shall put forth honest effort in the performance of their duties.

(6) Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

(7) Employees shall not use public office for private gain.



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(8) Employees shall act impartially and not give preferential treatment to any private organization or individual.

(9) Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.

(10) Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

(12) Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those--such as Federal, State, or local taxes--that are imposed by law.

(13) Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age, or handicap.

(14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

(c) Related statutes. In addition to the standards of ethical conduct set forth in this part, there are conflict of interest statutes that prohibit certain conduct. Criminal conflict of interest statutes of general applicability to all employees, 18 U.S.C. 201, 203, 205, 208, and 209, are summarized in the appropriate subparts of this part and must be taken into consideration in determining whether conduct is proper. Citations to other generally applicable statutes relating to employee conduct are set forth in subpart I and employees are further cautioned that there may be additional statutory and regulatory restrictions applicable to them generally or as employees of their specific agencies. Because an employee is considered to be on notice of the requirements of any statute, an employee should not rely upon any description or synopsis of a statutory restriction, but should refer to the statute itself and obtain the advice of an agency ethics official as needed.

[57 FR 35042, Aug. 7, 1992]



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

76556004

### § 2635.102 Definitions.

The definitions listed below are used throughout this part. Additional definitions appear in the subparts or sections of subparts to which they apply. For purposes of this part:

(a) Agency means an executive agency as defined in 5 U.S.C. 105 and the Postal Service and the Postal Rate Commission. It does not include the General Accounting Office or the Government of the District of Columbia.

(b) Agency designee refers to any employee who, by agency regulation, instruction, or other issuance, has been delegated authority to make any determination, give any approval, or take any other action required or permitted by this part with respect to another employee. An agency may delegate these authorities to any number of agency designees necessary to ensure that determinations are made, approvals are given, and other actions are taken in a timely and responsible manner. Any provision that requires a determination, approval, or other action by the agency designee shall, where the conduct in issue is that of the agency head, be deemed to require that such determination, approval or action be made or taken by the agency head in consultation with the designated agency ethics official.

(c) Agency ethics official refers to the designated agency ethics official or to the alternate designated agency ethics official, referred to in § 2638.202(b) of this chapter, and to any deputy ethics official, described in § 2638.204 of this chapter, who has been delegated authority to assist in carrying out the responsibilities of the designated agency ethics official.

(d) Agency programs or operations refers to any program or function carried out or performed by an agency, whether pursuant to statute, Executive order, or regulation.

(e) Corrective action includes any action necessary to remedy a past violation or prevent a continuing violation of this part, including but not limited to restitution, change of assignment, disqualification, divestiture, termination of an activity, waiver, the creation of a qualified diversified or blind trust, or counseling.

(f) Designated agency ethics official refers to the official designated under § 2638.201 of this chapter.

(g) Disciplinary action includes those disciplinary actions referred to in Office of Personnel Management regulations and instructions implementing provisions of title 5 of the United States



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

76558004

Code or provided for in comparable provisions applicable to employees not subject to title 5, including but not limited to reprimand, suspension, demotion, and removal. In the case of a military officer, comparable provisions may include those in the Uniform Code of Military Justice.

(h) Employee means any officer or employee of an agency, including a special Government employee. It includes officers but not enlisted members of the uniformed services. It includes employees of a State or local government or other organization who are serving on detail to an agency, pursuant to 5 U.S.C. 3371, et seq. For purposes other than subparts B and C of this part, it does not include the President or Vice President. Status as an employee is unaffected by pay or leave status or, in the case of a special Government employee, by the fact that the individual does not perform official duties on a given day.

(i) Head of an agency means, in the case of an agency headed by more than one person, the chair or comparable member of such agency.

(j) He, his, and him include she, hers and her.

(k) Person means an individual, corporation and subsidiaries it controls, company, association, firm, partnership, society, joint stock company, or any other organization or institution, including any officer, employee, or agent of such person or entity. For purposes of this part, a corporation will be deemed to control a subsidiary if it owns 50 percent or more of the subsidiary's voting securities. The term is all-inclusive and applies to commercial ventures and nonprofit organizations as well as to foreign, State, and local governments, including the Government of the District of Columbia. It does not include any agency or other entity of the Federal Government or any officer or employee thereof when acting in his official capacity on behalf of that agency or entity.

(l) Special Government employee means those executive branch officers or employees specified in 18 U.S.C. 202(a). A special Government employee is retained, designated, appointed, or employed to perform temporary duties either on a full-time or intermittent basis, with or without compensation, for a period not to exceed 130 days during any consecutive 365-day period.

(m) Supplemental agency regulation means a regulation issued pursuant to § 2635.105.

[57 FR 35042, Aug. 7, 1992; 71 FR 45735, 45736, Aug. 10, 2006]

[EFFECTIVE DATE NOTE: 71 FR 45735, 45736, Aug. 10, 2006, amended paragraph (h), effective Sept. 11, 2006.]



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# PART 77 -- ETHICAL STANDARDS FOR ATTORNEYS FOR THE GOVERNMENT

28 U.S.C. 530B.

## § 77.1 Purpose and authority.

(a) The Department of Justice is committed to ensuring that its attorneys perform their duties in accordance with the highest ethical standards. The purpose of this part is to implement 28 U.S.C. 530B and to provide guidance to attorneys concerning the requirements imposed on Department attorneys by 28 U.S.C. 530B.

(b) Section 530B requires Department attorneys to comply with state and local federal court rules of professional responsibility, but should not be construed in any way to alter federal substantive, procedural, or evidentiary law or to interfere with the Attorney General's authority to send Department attorneys into any court in the United States.

(c) Section 530B imposes on Department attorneys the same rules of professional responsibility that apply to non-Department attorneys, but should not be construed to impose greater burdens on Department attorneys than those on non-Department attorneys or to alter rules of professional responsibility that expressly exempt government attorneys from their application.

(d) The regulations set forth in this part seek to provide guidance to Department attorneys in determining the rules with which such attorneys should comply.

[Order No. 1903-94, 59 FR 39928, Aug. 4, 1994; Order No. 2216-99, 64 FR 19273, 19275, Apr. 20, 1999]

[EFFECTIVE DATE NOTE: 64 FR 19273, 19275, Apr. 20, 1999, revised Part 77, effective Apr. 19, 1999.]



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 77.2 Definitions.

As used in this part, the following terms shall have the following meanings, unless the context indicates otherwise:

(a) The phrase attorney for the government means the Attorney General; the Deputy Attorney General; the Solicitor General; the Assistant Attorneys General for, and any attorney employed in, the Antitrust Division, Civil Division, Civil Rights Division, Criminal Division, Environment and Natural Resources Division, and Tax Division; the Chief Counsel for the DEA and any attorney employed in that office; the Chief Counsel for ATF and any attorney employed in that office; the General Counsel of the FBI and any attorney employed in that office or in the (Office of General Counsel) of the FBI; any attorney employed in, or head of, any other legal office in a Department of Justice agency; any United States Attorney; any Assistant United States Attorney; any Special Assistant to the Attorney General or Special Attorney duly appointed pursuant to 28 U.S.C. 515; any Special Assistant United States Attorney duly appointed pursuant to 28 U.S.C. 543 who is authorized to conduct criminal or civil law enforcement investigations or proceedings on behalf of the United States; and any other attorney employed by the Department of Justice who is authorized to conduct criminal or civil law enforcement proceedings on behalf of the United States. The phrase attorney for the government also includes any independent counsel, or employee of such counsel, appointed under chapter 40 of title 28, United States Code. The phrase attorney for the government does not include attorneys employed as investigators or other law enforcement agents by the Department of Justice who are not authorized to represent the United States in criminal or civil law enforcement litigation or to supervise such proceedings.

(b) The term case means any proceeding over which a state or federal court has jurisdiction, including criminal prosecutions and civil actions. This term also includes grand jury investigations and related proceedings (such as motions to quash grand jury subpoenas and motions to compel testimony), applications for search warrants, and applications for electronic surveillance.

(c) The phrase civil law enforcement investigation means an investigation of possible civil violations of, or claims under, federal law that may form the basis for a civil law enforcement proceeding.

(d) The phrase civil law enforcement proceeding means a civil action or proceeding before any court or other tribunal brought by the Department of Justice under the authority of the United States to enforce federal laws or regulations, and includes proceedings related to the enforcement of an administrative subpoena or summons or civil investigative demand.



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

76560604

(e) The terms conduct and activity means any act performed by a Department attorney that implicates a rule governing attorneys, as that term is defined in paragraph (h) of this section.

(f) The phrase Department attorney[s] is synonymous with the phrase "attorney[s] for the government" as defined in this section.

(g) The term person means any individual or organization.

(h) The phrase state laws and rules and local federal court rules governing attorneys means rules enacted or adopted by any State or Territory of the United States or the District of Columbia or by any federal court, that prescribe ethical conduct for attorneys and that would subject an attorney, whether or not a Department attorney, to professional discipline, such as a code of professional responsibility. The phrase does not include:

(1) Any statute, rule, or regulation which does not govern ethical conduct, such as rules of procedure, evidence, or substantive law, whether or not such rule is included in a code of professional responsibility for attorneys;

(2) Any statute, rule, or regulation that purports to govern the conduct of any class of persons other than attorneys, such as rules that govern the conduct of all litigants and judges, as well as attorneys; or

(3) A statute, rule, or regulation requiring licensure or membership in a particular state bar.

(i) The phrase state of licensure means the District of Columbia or any State or Territory where a Department attorney is duly licensed and authorized to practice as an attorney. This term shall be construed in the same manner as it has been construed pursuant to the provisions of Pub. L. 96-132, 93 Stat. 1040, 1044 (1979), and Sec. 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agency Appropriations Act, 1999, Pub. L. 105-277.

(j)(1) The phrase where such attorney engages in that attorney's duties identifies which rules of ethical conduct a Department attorney should comply with, and means, with respect to particular conduct:

(i) If there is a case pending, the rules of ethical conduct adopted by the local federal court or state court before which the case is pending; or

(ii) If there is no case pending, the rules of ethical conduct that would be applied by the attorney's



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

state of licensure.

(2) A Department attorney does not "engage[] in that attorney's duties" in any states in which the attorney's conduct is not substantial and continuous, such as a jurisdiction in which an attorney takes a deposition (related to a case pending in another court) or directs a contact to be made by an investigative agent, or responds to an inquiry by an investigative agent. Nor does the phrase include any jurisdiction that would not ordinarily apply its rules of ethical conduct to particular conduct or activity by the attorney.

(k) The phrase to the same extent and in the same manner as other attorneys means that Department attorneys shall only be subject to laws and rules of ethical conduct governing attorneys in the same manner as such rules apply to non-Department attorneys. The phrase does not, however, purport to eliminate or otherwise alter state or federal laws and rules and federal court rules that expressly exclude some or all government attorneys from particular limitations or prohibitions.

[59 FR 39929, Aug. 4, 1994; 64 FR 19273, 19276, Apr. 20, 1999; 68 FR 4923, 4929, Jan. 31, 2003]

[EFFECTIVE DATE NOTE: 68 FR 4923, 4929, Jan. 31, 2003, amended paragraph (a), effective Jan. 24, 2003.]

## § 77.3 Application of 28 U.S.C. 530B.

In all criminal investigations and prosecutions, in all civil investigations and litigation (affirmative and defensive), and in all civil law enforcement investigations and proceedings, attorneys for the government shall conform their conduct and activities to the state rules and laws, and federal local court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State, as these terms are defined in § 77.2 of this part.

[Order No. 1903-94, 59 FR 39929, Aug. 4, 1994; Order No. 2216-99, 64 FR 19273, 19276, Apr. 20, 1999]



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[EFFECTIVE DATE NOTE: 64 FR 19273, 19276, Apr. 20, 1999, revised Part 77, effective Apr. 19, 1999.]

### § 77.4 Guidance.

(a) Rules of the court before which a case is pending. A government attorney shall, in all cases, comply with the rules of ethical conduct of the court before which a particular case is pending.

(b) Inconsistent rules where there is a pending case.

(1) If the rule of the attorney's state of licensure would prohibit an action that is permissible under the rules of the court before which a case is pending, the attorney should consider:

(i) Whether the attorney's state of licensure would apply the rule of the court before which the case is pending, rather than the rule of the state of licensure;

(ii) Whether the local federal court rule preempts contrary state rules; and

(iii) Whether application of traditional choice-of-law principles directs the attorney to comply with a particular rule.

(2) In the process of considering the factors described in paragraph (b)(1) of this section, the attorney is encouraged to consult with a supervisor or Professional Responsibility Officer to determine the best course of conduct.

(c) Choice of rules where there is no pending case.

(1) Where no case is pending, the attorney should generally comply with the ethical rules of the attorney's state of licensure, unless application of traditional choice-of-law principles directs the attorney to comply with the ethical rule of another jurisdiction or court, such as the ethical rule adopted by the court in which the case is likely to be brought.

(2) In the process of considering the factors described in paragraph (c)(1) of this section, the attorney is encouraged to consult with a supervisor or Professional Responsibility Officer to determine the best course of conduct.



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(d) Rules that impose an irreconcilable conflict. If, after consideration of traditional choice-of-law principles, the attorney concludes that multiple rules may apply to particular conduct and that such rules impose irreconcilable obligations on the attorney, the attorney should consult with a supervisor or Professional Responsibility Officer to determine the best course of conduct.

(e) Supervisory attorneys. Each attorney, including supervisory attorneys, must assess his or her ethical obligations with respect to particular conduct. Department attorneys shall not direct any attorney to engage in conduct that violates section 530B. A supervisor or other Department attorney who, in good faith, gives advice or guidance to another Department attorney about the other attorney's ethical obligations should not be deemed to violate these rules.

(f) Investigative Agents. A Department attorney shall not direct an investigative agent acting under the attorney's supervision to engage in conduct under circumstances that would violate the attorney's obligations under section 530B. A Department attorney who in good faith provides legal advice or guidance upon request to an investigative agent should not be deemed to violate these rules.

[Order No. 1903-94, 59 FR 39929, Aug. 4, 1994; Order No. 2216-99, 64 FR 19273, 19276, Apr. 20, 1999]

[EFFECTIVE DATE NOTE: 64 FR 19273, 19276, Apr. 20, 1999, revised Part 77, effective Apr. 19, 1999.]

## § 77.5 No private remedies.

The principles set forth herein, and internal office procedures adopted pursuant hereto, are intended solely for the guidance of attorneys for the government. They are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party to litigation with the United States, including criminal defendants, targets or subjects of criminal investigations, witnesses in criminal or civil cases (including civil law enforcement proceedings), or plaintiffs or defendants in civil investigations or litigation; or any other person, whether or not a party to litigation with the United States, or their counsel; and shall not be a basis for dismissing criminal or civil charges or proceedings or for excluding



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

relevant evidence in any judicial or administrative proceeding. Nor are any limitations placed on otherwise lawful litigative prerogatives of the Department of Justice as a result of this part.

[Order No. 1903-94, 59 FR 39929, Aug. 4, 1994; Order No. 2216-99, 64 FR 19273, 19277, Apr. 20, 1999]

[EFFECTIVE DATE NOTE: 64 FR 19273, 19277, Apr. 20, 1999, revised Part 77, effective Apr. 19, 1999.]



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# CHAPTER 113C. TORTURE

§ 2340. Definitions
§ 2340A. Torture
§ 2340B. Exclusive remedies

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463 (effective on the later of (1) the date of enactment of such Act or (2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as provided by § 506(c) of such Act, which appears as 18 USCS § 2340 note) added the chapter heading and chapter analysis.

**1996.** Act April 24, 1996, P. L. 104-132, Title III, Subtitle A, § 303(c)(1), 110 Stat. 1253, redesignated this chapter, enacted as Chapter 113B, as Chapter 113C.

Act Oct. 11, 1996, P. L. 104-294, Title VI, § 601(j)(1), 110 Stat. 3501, purported to redesignate this chapter as Chapter 113C; however, because of a prior amendment, this amendment could not be executed. This amendment was repealed by Act Nov. 2, 2002, effective Oct. 11, 1996.

**2002.** Act Nov. 2, 2002, P. L. 107-273, Div B, Title IV, § 4002(c)(1), 116 Stat. 1808 (effective 10/11/1996, pursuant to § 4002(c)(1) of such Act), repealed § 601(j)(1) of Act Oct. 11, 1996, P. L. 104-294.

## § 2340. Definitions

As used in this chapter [18 USCS §§ 2340 et seq.]--

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from--

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;

(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(C) the threat of imminent death; or

(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(3) "United States" means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

(Added April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463; Oct 25, 1994, P. L. 103-415, § 1(k), 108 Stat. 4301; Oct. 31, 1994, P. L. 103-429, § 2(2), 108 Stat. 4377; Oct. 28, 2004, P. L. 108-375, Div A, Title X, Subtitle I, § 1089, 118 Stat. 2067 .)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Effective date of section:**

This section took effect on the later of (1) the date of enactment or (2) the date on which the United States became a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as provided by § 506(c) of Act April 30, 1994, P. L. 103-236, which appears as a note to this section. [The Convention entered into force with respect to the United States on Nov. 20, 1994, Treaty Doc. 100-20.]

**Amendments:**

**1994.** Act Oct. 25, 1994, in para. (1), substituted "within his" for "with".

Act Oct. 31, 1994, in para. (3), substituted "section 46501(2) of title 49" for "section 101(38) of the Federal Aviation Act of 1958 (49 U.S.C. App. 1301(38))".

**2004.** Act Oct. 28, 2004, substituted para. (3) for one which read: "(3) 'United States' includes all areas under the jurisdiction of the United States including any of the places described in sections 5 and 7 of this title and section 46501(2) of title 49.".

**Other provisions:**

**Effective date of 18 USCS §§ 2340 et seq.** Act April 30, 1994, P. L. 103-236, Title V, Part A, § 506(c), 108 Stat. 463, provides: "The amendments made by this section [adding 18 USCS §§ 2340 et seq.] shall take effect on the later of--

"(1) the date of enactment of this Act; or

"(2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.".

[The Convention entered into force with respect to the United States on Nov. 20, 1994, Treaty Doc. 100-20.]

## RESEARCH REFERENCES

### Cross References

This section is referred to in 10 USCS § 950v; 18 USCS §§ 114, 111, 2441

### Research Guide

**Am Jur:**

3B Am Jur 2d, Aliens and Citizens § 1431



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3C Am Jur 2d, Aliens and Citizens §§ 1399, 1547

**Immigration:**

3 Immigration Law and Procedure (rev. ed.), ch 33, Refugees, Asylum, Withholding of/Restriction on Removal, and Convention Against Torture Relief § 33.10

**Annotations:**

Adjudication of Application for "U Visa," by Alien Eligible Under 8 U.S.C.A. § 1101(a)(15)(U) [8 USCS § 1101(a)(15)(U)], Pursuant to 8 U.S.C.A. § 1184(p) [8 USCS § 1184(p)]. 78 ALR Fed 2d 515

**Law Review Articles:**

Venetis. Making Human Rights Treaty Law Actionable in the United States: the Case for Universal Implementing Legislation. 63 Ala L Rev 97, 2011

Bekerman. Torture-The Absolute Prohibition of a Relative Term: Does Everyone Know What is in Room 101? 53 Am J Comp L 743, fall 2005

Keller. Is Truth Serum Torture? 20 Am U Int'l L Rev 521, 2005

Crook. Contemporary Practice of the United States Relating to International Law: Edited by John R. Crook: International Human Rights and Humanitarian Law: Justice Department Issues New Memorandum on Torture. 99 AJIL 479, April 2005

Sussman. "Torture and the War on Terror": Defining Torture. 37 Case W Res J Int'l L 225, 2006

Pearlstein. Finding Effective Constraints on Executive Power: Interrogation, Detention, and Torture. 81 Ind LJ 1255, Fall 2005

Kreimer. Fighting Terrorism with Torture: Where to Draw the Line?: "Torture Lite," "Full Bodied" Torture, and the Insulation of Legal Conscience. 1 J Nat'l Security L & Pol'y 187, 2005

Scheppele. Fighting Terrorism with Torture: Where to Draw the Line?: Hypothetical Torture in the "War on Terrorism". 1 J Nat'l Security L & Pol'y 285, 2005

Levit. Fighting Terrorism with Torture: Where to Draw the Line?: The CIA and the Torture Controversy: Interrogation Authorities and Practices in the War on Terror. 1 J Nat'l Security L & Pol'y 341, 2005

Aceves; Hoffman. Using Immigration Law to Protect Human Rights: A Critique of Recent Legislative Proposals. 23 Mich J Int'l L 733, Summer 2002

Taylor. Law in the Age of Terrorism: Torture, Rendition & the United States: Dancing with the Scavenger's Daughter. 30 Montana Lawyer 10, June/July 2005

Amann. Current Debates in the Conflict of Laws: Application of the Constitution to Guantanamo Bay: Abu Ghraib. 153 U Pa L Rev 2085, June 2005

Ragavan; Mireles. The Status of Detainees from the Iraq and Afghanistan Conflicts. 2005 Utah L Rev 619, 2005

Cohan. Torture and the Necessity Doctrine. 41 Val UL Rev 1587, Summer 2007

**CASE ANNOTATIONS**



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Definition of "torture" in 18 USCS § 2340(2) is limited to use of that word in Chapter 113C and, therefore, does not extend to jury instruction under 18 USCS § 3592(c)(6); thus, district court did not err in refusing to instruct jury that mental harm sufficient to establish torture must be prolonged. United States v Chanthadara (2000, CA10 Kan) 230 F.3d 1237, 2000 Colo J C A R 6005, cert den (2001) 534 US 992, 122 S Ct 457, 151 L Ed 2d 376 and (criticized in United States v Purkey (2005, CA8 Mo) 428 F.3d 738, 68 Fed Rules Evid Serv 907) and (criticized in United States v Quinones (2007, CA2 NY) 511 F.3d 289)

United States validly adopted United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, pursuant to President's U.S. Const. art. II treaty-making authority, and it was well within Congress's power under Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, to criminalize both torture, as defined by Torture Act, 18 USCS §§ 2340-2340A, and conspiracy to commit torture. United States v Belfast (2010, CA11 Fla) 611 F.3d 783, 22 FLW Fed C 1179

18 USCS § 924(c) applied to defendant's extraterritorial conduct of committing acts of torture in Liberia; § 924(c) charge can arise out of extraterritorial conduct that is found to be in violation of Torture Act, 18 USCS §§ 2340-2340A, as Congress intended to apply § 924(c) extraterritorially when underlying substantive statute had extraterritorial application. United States v Belfast (2010, CA11 Fla) 611 F.3d 783, 22 FLW Fed C 1179

Fugitive's extradition was not time barred under Extradition Treaty, U.S-Bosn. & Herz., art. VII, because fugitive was charged under laws of Bosnia and Herzegovina with war crimes against civilians, including torture and inhuman treatment, so United States Torture Act applied, and there was no statute of limitations under Act, and ex post facto principles did not bar retroactive application of Torture Act's statute of limitations. Nezirovic v Holt (2015, CA4 Va) 779 F.3d 233

## § 2340A. Torture

(a) **Offense.** Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

(b) **Jurisdiction.** There is jurisdiction over the activity prohibited in subsection (a) if--

(1) the alleged offender is a national of the United States; or

(2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender.

(c) **Conspiracy.** A person who conspires to commit an offense under this section shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense, the commission of which was the object of the conspiracy.

(Added April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463; Sept. 13, 1994, P. L. 103-322, Title VI, § 60020, 108 Stat. 1979; Oct. 26, 2001, P. L. 107-56, Title VIII, § 811(g), 115 Stat. 381 .)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Effective date of section:**

This section takes effect on the later of (1) the date of enactment or (2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as provided by § 506(c) of Act April 30, 1994, P. L. 103-236, which appears as 18 USCS § 2340 note. [The Convention entered into force with respect to the United States on Nov. 20, 1994, Treaty Doc. 100-20.]

**Amendments:**

**1994.** Act Sept. 13, 1994, in subsec. (a), inserted "punished by death or".

**2001.** Act Oct. 26, 2001, added subsec. (c).



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

From: Roy M. Belfast, Jr.
Inmate: 76556-004
Address: U.S.P. LEE COUNTY
P.O. Box 305
Jonesville, VA, 24263-0305
Criminal Case No.: 1:06-cr-20758-CMA
To: Office of Information Policy (OIP), Director
Address: United States Department of Justice, Suite 11050, 1425 New York Avenue, N.W., Washington, D.C., 20530
Date: June 18th, 2017
sent via certified no.: 7016 1370 0001 7627 6226
sent via return receipt no:

O.I.P.

Petitioner dispatched a FOIA request to the E.O.U.S.A./Freedom of Information & Privacy Staff, who dispatched a letter dated on April 20th, 2016 (see Exhibit "A"). The initial request to the E.O.U.S.A. was the Department of Justice, provide the petitioner the evidence relied upon to prove a violation of 18 U.S.C. § 2340A(c) before the grand jury and at trial which is count one in second superseding indictment.

Petitioner received a letter dated May 17th, 2017 (Ex. "A1") with the release of a 168 pages. The contents released are after indictment date 11/08/2007, see Criminal case no: 1:06-cr-20758-CMA, Document 257 on Docket Sheet, and trial verdict Oct 30th 2008.

Statute 18 U.S.C. § 2340A(b)(1)(2) states: (b) Jurisdiction. There is jurisdiction over the activity prohibited in subsection (a) if - -
(1) the alleged offender is a national of the United States; or
(2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender. (see Exhibit B).

The recent declaration dated in the May 17, 2017 letter "No other responsive records were located" and the release of 168 pages of documents produced after indictment and trial, suggest a substantive "due process" violation.

In addition prosecutes recently declared in docket entry: 673 dated 04/21/2016 of petitioner's criminal docket sheet, page 20 of 25 "The trial record is devoid of any statement that any co-conspirators were citizens of or present in the United States" (see Exhibit "C"), proves a violation of 18 U.S.C. § 4001(a) and 28 C.F.R. 2635.101 et seq. as well as misconduct
Appeal: The records released are non responsive to request by petitioner (originally), as the records released by the E.O.U.S.A. are post grand jury and trial, which means the records presented cannot have been evidence used in prior proceedings. The FOIA request FOIA-2016-02166 is directly connected to a substantive due process violation and misconduct by prosecution including but not limited to 18 U.S.C. § 1001.

Petitioner seeks a release of FOIA information & expedited request based upon original request found in FOIA-2016-02166, and notification to an investigatory body that handles misconduct by prosecutors, as well as notification to the A.G.'s office on the violation of 18 U.S.C. § 4001(a).

Thank you for your time and attention in this matter.

Sincerely,

Roy Belfast, Jr.

**U.S. Department of Justice**
*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.*
*Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 252-6020 FAX: 252-6047 (www.usdoj.gov/usao)*

April 20, 2016

Roy Belfast, Jr.
#76556-004
USP, P.O. Box 1033
Coleman, Florida 33521

Re: Request Number: FOIA-2016-02166
Date of Receipt: April 5, 2016
Subject of Request: Self (All) Southern District of Florida

Dear Mr. Belfast, Jr.:

The purpose of this letter is to acknowledge receipt of your Freedom of Information Act/Privacy Act request dated **March 23, 2016** and received in the Executive Office for United States Attorneys (EOUSA) on April 5, 2016. You requested all records concerning yourself. Your request has been assigned Tracking Number FOIA-2016-02166.

For your information, EOUSA assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. As an estimate, the likely median response time for simple requests is approximately 30 business days, whereas complex requests necessarily take longer. At this time, your request has been assigned to the Complex track.

Please be advised that there may be certain costs associated with processing your request. Consequently, you may be responsible for paying those costs, unless you have requested and been granted a waiver or reduction in fees. In most instances, the first 100 pages to duplicate and the first two hours to search for records responsive to your request, will be provided to you free of charge. Thereafter, search and review fees by professional personnel are charged at $40 per hour and duplication fees are assessed at five cents per page.

Requests that are specific, concrete and of limited scope (in time and/or subject matter) generally enable us to respond to you more quickly and possibly assess less fees. You may decide to limit or reduce the estimated fees, or obtain a quicker response, by modifying your request in one or more ways specified in the attachment to this letter. If after making those allowances we determine that the cost to process your request will amount to more than $25.00, we will notify you in writing at a later date.

If you have any questions regarding any aspect of your case, you may contact EOUSA by telephone or in writing using the contact information listed above. Please refer to your assigned tracking number, should you contact EOUSA seeking information about your request.

Sincerely,

Susan B. Gerson
Assistant Director

Attachment

Form No. 001 - 6/12

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 7300, Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6047*

January 30, 2017

Roy Belfast, Jr.
#76556-004
USP, P.O. Box 1000
Lewisburg, Pennsylvania 17837

Re: Request Number: FOIA-2016-02166
Date of Receipt: April 5, 2016
Subject of Request: Self (All) Southern District of Florida

Dear Belfast, Jr.:

This letter is written to inform you of the current status of your pending FOIA request for records. In order to process all requests as equitably as possible, this office has adopted a "first-in-first-out" policy of processing all incoming requests. Your request is being handled as equitably as possible and all records which can be released will be made available at the earliest possible date.

The following is the status of your request:

[ x ] awaiting a response from the local U.S. Attorney's Office

[ ] response has been received and will be processed according to "first-in-first-out" policy

[ ] being reviewed by attorney

If you have any concern or question, please feel free to call our office.

Sincerely,

Kevin Krebs
Assistant Director

Form No. 046 – 4/11

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 7300, Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6047*

October 26, 2016

Roy Belfast, Jr.
#76556-004
USP, P.O. Box 1000
Lewisburg, Pennsylvania 17837

Re: Request Number: FOIA-2016-02166
Date of Receipt: April 5, 2016
Subject of Request: Self (All) Southern District of Florida

Dear Belfast, Jr.:

This letter is written to inform you of the current status of your pending FOIA request for records. In order to process all requests as equitably as possible, this office has adopted a "first-in-first-out" policy of processing all incoming requests. Your request is being handled as equitably as possible and all records which can be released will be made available at the earliest possible date.

The following is the status of your request:

[x ] awaiting a response from the local U.S. Attorney's Office

[ ] response has been received and will be processed according to "first-in-first-out" policy

[ ] being reviewed by attorney

If you have any concern or question, please feel free to call our office.

Sincerely,

Thomas D. Anderson
Acting Assistant Director

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 7300, Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6047*

May 17, 2017

Roy Belfast, Jr.
#76556-004
USP, P.O. Box 1000
Lewisburg, Pennsylvania 17837

Re: Request Number: FOIA-2016-02166 Date of Receipt: April 5, 2016
Subject of Request: Self /Specific Records - USAO Southern District of Florida

Dear Mr. Belfast, Jr.:

Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Office. To provide you with the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

All of the records you seek are being made available to you. We have processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a full release of 168 pages responsive to your request. No other responsive records were located.

[ ] A review of the material revealed:

[ ] Our office located records that originated with another government component. **These records were found in the U.S. Attorney's Office files.** Once we have received the above payment, these records will be referred to the following component(s) listed for review and direct response to you:

[ ] There are public records which may be obtained from the clerk of the court or this office, upon specific request. If you wish to obtain a copy of these records, you must submit a new request. These records will be provided to you subject to copying fees.

[ ] Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought. Each file was given a separate Request Number (listed below), for which you will receive a separate response:

[ ] See additional information on next page.

This is the final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following website: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

Enclosure(s)

# PART 2635 -- STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

5 U.S.C. 7301, 7351, 7353; 5 U.S.C. App. (Ethics in Government Act of 1978); E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

---



© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

76556004

§ 1746. Unsworn declarations under penalty of perjury

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

**(Signature)".**

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

**(Signature)".**

(Added Oct. 18, 1976, P. L. 94-550, § 1(a), 90 Stat. 2534 .)



© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 16-13950-J

---

IN RE: ROY BELFAST, JR.,

Petitioner.

---

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

---

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Roy Belfast, Jr. has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

In his application, filed with the assistance of counsel, Belfast indicates that he wishes to raise one claim in a second or successive § 2255 motion, relying upon the new rule of constitutional law announced in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d. 569 (2015). Belfast argues that his 18 U.S.C. §§ 924(c) and (o) convictions are no longer valid, because neither torture nor conspiracy to commit torture is a crime of violence after *Johnson.*

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

In *Johnson*, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. *Johnson*, 576 U.S. at ___, 135

S. Ct. at 2557-58, 2563. The Court explained that, to determine whether a crime qualifies as a violent felony under the ACCA's residual clause, courts must apply the categorical approach. *Id.* at __, 135 S. Ct. at 2557. Under that approach, the court must first decide what kind of conduct the crime involves "in the ordinary case," and then determine degree of risk posed by that conduct. *Id.* The Court first concluded the residual clause offered no reliable method to determine what the "ordinary case" of a crime entailed, leaving "grave uncertainty about how to estimate the risk posed by a crime." *Id.* at __, 135 S. Ct. at 2257-58. The Court next explained the residual clause also leaves uncertainty about the degree of risk necessary for a crime to qualify as a violent felony because it requires judges to apply the "serious potential risk" standard to the imagined "ordinary case." *Id.* at __, 135 S. Ct. at 2558. Furthermore, the residual clause requires courts to interpret "serious potential risk" in light of the ACCA's four enumerated offenses, which are "far from clear in respect to the degree of risk each poses." *Id.* (quotation omitted). The Court concluded that the combined indeterminacy about how to measure the risk posed by a crime and how much risk is necessary to qualify as a violent felony "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* The Court stated the "hopeless indeterminacy" of the residual clause was confirmed both by its own repeated attempts and failures to craft a meaningful standard and the numerous divisions that had arisen among the lower federal courts. *Id.* at __, 135 S. Ct. at 2558-60. The Court also noted that, although many criminal statutes use terms like "substantial risk," the Court's holding in *Johnson* did not cast constitutional doubt on such statutes because the majority of those statutes (1) did not link a phrase such as "substantial risk" to a "confusing list of examples" and (2) applied the substantial risk standard to real-world conduct rather than an idealized "ordinary case." *Id.* at __, 135 S. Ct. at 2561. Finally, the Court clarified

Case: 16-13950 Date Filed: 07/27/2016 Page: 4 of 14

that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563.

In *Welch v. United States*, 578 U.S. ___, ___, 136 S. Ct. 1257, 1264-65, 1268, 194 L. Ed. 2d 387 (2016), the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. In light of the Supreme Court's holdings in *Johnson* and *Welch*, federal prisoners who can make a *prima facie* showing that they previously were sentenced, at least in part, in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion in the district court. *See In re Robinson*, No. 16-11304, manuscript op. at 2 (11th Cir. Apr. 19, 2016) (holding that *In re Franks*, 815 F.3d 1281 (11th Cir. 2016), which had held that *Johnson* claims brought by ACCA offenders cannot satisfy the statutory requirements of § 2255(h)(2), is no longer good law). Merely alleging a basis that meets § 2255(h)'s requirements in the abstract only "represent[s] the minimum showing" necessary to file a successive § 2255 motion, however, because, under § 2244(b)(3)(C), the applicant also must make "a *prima facie* showing that the application satisfies the requirements of this subsection." *In re Holladay*, 331 F.3d 1169, 1173, 1177 (11th Cir. 2003) (granting a state death-row inmate's successive application because he had proffered detailed evidence, in satisfaction of § 2244(b)(3)(C), that showed "a reasonable likelihood that [he] is mentally retarded" to support his proposed *Atkins* claim). Accordingly, it appears that it is not enough for a federal prisoner to simply identify *Johnson* as the basis for the claim or claims he seeks to raise in a second or successive § 2255 motion; rather, he also must show that he falls within the scope of the new substantive rule announced in *Johnson*. *See, e.g.*, *id.*; 28 U.S.C. § 2244(b)(3)(C).

Distinct from the provision in § 924(e), § 924(c) provides for a mandatory consecutive sentence for any defendant who uses a firearm during a crime of violence or a drug trafficking crime. 18 U.S.C. § 924(c)(1). For the purposes of § 924(c), "crime of violence" means an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). We have not yet decided if *Johnson* extends to the residual clause found in § 924(c)(3)(B), but we have observed that some other circuits have concluded that it does extend to § 924(c) and the identically-worded 18 U.S.C. § 16(b), while other circuits have said it does not extend to those provisions. *In re Pinder*, No. 16-12084 (11th Cir. June 1, 2016).

As to the facts of this case, in a second superseding indictment, Belfast was charged with conspiracy to commit torture, in violation of 18 U.S.C. § 2340A (Count 1); conspiracy to use, carry, and possess firearms during and in relation to the crime of violence set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(o) (Count 2); torture, in violation of 18 U.S.C. § 2340(1) (Counts 3-7); and using, carrying, and possessing a firearm during and in relation to a crime of violence, as set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(c)(1)(A). Belfast was convicted by a jury of all counts, and sentenced to a total imprisonment term of 1,164 months. That term consisted of 240 months as to Count 1; 240 months as to Count 2; 120 months as to each of Counts 3, 4, 5, 6, and 7; and 84 months as to Count 8, all terms running consecutively to each other.

Belfast's claim does not meet the statutory criteria for granting his application. We concluded in Belfast's direct appeal that torture was "unquestionably a crime of violence; its elements require an act 'specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within [the defendant's] custody or physical control.'" *United States v. Belfast*, 611 F.3d 783, 814 n.7 (11th Cir. 2010). Consequently, we have already held that Belfast's conviction for torture qualifies as a crime of violence under the elements clause, and Belfast's claim fails. Consequently, Belfast's convictions and sentences were not affected by *Johnson*, even if *Johnson* does extend to § 924(c) convictions.

Accordingly, because Belfast has failed to make a *prima facie* showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is hereby DENIED.

MARTIN, Circuit Judge, dissenting:

The majority relies on a footnote from our decision in Mr. Belfast's direct appeal, United States v. Belfast, 611 F.3d 783 (11th Cir. 2010), to say that Mr. Belfast's conviction for torture under 18 U.S.C. § 2340(1) qualifies as a crime of violence under § 924(c)'s "elements" clause. The text of that footnote is so brief that I include it here in its entirety:

> [Mr. Belfast] does not argue that torture is not a "crime of violence" under § 924(c). A "crime of violence" is "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another. . . ." 18 U.S.C. § 924(c)(3). Torture is unquestionably a crime of violence; its elements require an act "specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within [the defendant's] custody or physical control." 18 U.S.C. § 2340(1).

Id. at 814 n.7 (emphasis added). Mr. Belfast had not argued the point because, at the time of his direct appeal, it would have been futile. Neither had our Court acknowledged at that time that "the law is unsettled" as to whether § 924(c)'s residual clause is unconstitutional.[1] In re Pinder, No. 16-12084-J, 2016 WL 3081954, at *2 (11th Cir. June 1, 2016). Because the residual clause was

[1] As the majority says, the residual clause defines a crime of violence as any felony that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." We acknowledged in Pinder that this clause may be invalidated by the Supreme Court's decision in Johnson v. United States, 576 U.S. __, 135 S.Ct. 2551 (2015).

inarguably in place at that time, there was little question that Mr. Belfast's torture conviction would qualify as a crime of violence.

Now, however, we contemplate a § 924(c) that may be starkly different from the statute that Congress enacted; that Mr. Belfast was sentenced under; and that our Court considered at the time of his direct appeal. If the Supreme Court's decision in Johnson indeed invalidated § 924(c)'s residual clause, then Mr. Belfast's convictions may only count as a crime of violence if they "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." Like my colleagues, I am considering these motions on a tight thirty-day deadline. However, my limited review of this issue reveals that no other Court of Appeals has even considered whether torture counts as a crime of violence under either § 924(c)'s force or residual clause. Indeed, I can't find any cases considering whether torture counts as a "crime of violence" under analogous clauses in other statutes. As this question has not been given full consideration in our Circuit or elsewhere, I would grant Mr. Belfast certification to file his § 2255 motion in the District Court.

I.

The panel that decided Mr. Belfast's direct appeal concluded, in dicta, that "[t]orture is unquestionably a crime of violence." This conclusion is appealingly simple. And it is tempting to consider the facts of Mr. Belfast's crimes, which

certainly involved the use of violent physical force, in making this determination. But, what Mr. Belfast actually did has no legal relevance to the question of whether the crime he was convicted of is a "crime of violence" under § 924(c)'s elements clause. What matters is whether his crime "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). Indeed, whether a crime is

> within the ambit of 18 U.S.C. § 924(c) . . . is a question . . . we must answer "categorically"—that is, by reference to the elements of the offense, and not the actual facts of [the defendant]'" conduct. We employ this categorical approach because of the statute's terms: It asks whether [the defendant] committed "an offense" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

United States v. McGuire, 706 F.3d 1333, 1336 (11th Cir. 2013) (O'Connor, J.) (citation omitted) (emphasis in original).

The Supreme Court has held that the term "physical force" as used in § 924(c)(3)(A) requires "violent force" which means "strong physical force" or force "capable of causing physical pain or injury to another person." Curtis Johnson v. United States, 559 U.S. 133, 139, 130 S. Ct. 1265, 1270 (2010). If torture or conspiracy to commit torture can be committed without the type of force described by Curtis Johnson, then those crimes obviously can't have "as an element the use, attempted use, or threatened use of physical force." There is at least an argument as to both crimes.

Case: 16-13950 Date Filed: 07/27/2016 Page: 10 of 14

A.

18 U.S.C. § 2340(1) defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." There are many ways to inflict severe physical or mental pain without employing the use of physical force. For example, a prisoner could be subjected to stress positions, sleep-deprivation, or extreme temperatures. These practices could doubtlessly constitute torture even if they do not require violent physical force.

Mr. Belfast has a stronger argument with respect to his conspiracy conviction. "It's a separate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if it was actually carried out." 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that the defendant need take any "overt act" in furtherance of the conspiracy.

In In re Pinder, No. 16-12084-J, 2016 WL 3081954, at *2 (11th Cir. June 1, 2016), we recently granted an application for a defendant to challenge a

§ 924(c) conviction based on the companion crime of conspiracy to commit Hobbs Act robbery. At least two district courts have already held that Hobbs Act conspiracy is not a crime of violence precisely because the statute does not expressly require as an element the commission of an overt act. See United States v. Luong, No. 2:99-00433, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016); United States v. Edmundson, No. PWG-13-15, __ F.Supp.3d __, __, 2015 WL 9311983, at *6 (D. Md. Dec. 23, 2015). Without the requirement of an overt act, conspiracy of any sort can be committed without the use, attempted use, or threatened use of physical force. If that element was also missing from Mr. Belfast's conspiracy to commit torture charge, we would be aided by looking into whether that crime satisfies § 924(c)'s force clause.[2]

B.

There is an additional reason I believe Mr. Belfast's application should be granted. As best I can tell, Mr. Belfast's superseding indictment listed both his substantive torture counts and his conspiracy to commit torture count as possible predicate convictions for supporting his convictions under § 924(c) (and the accompanying sentencing provision, § 924(o)), which criminalizes carrying a firearm during a "crime of violence." In United States v. Schlei, 122 F.3d 944

[2] The majority does not, and cannot, contend that our decision in Mr. Belfast's direct appeal answers whether conspiracy to commit torture is a crime of violence under the elements clause.

(11th Cir. 1997), we held that "[a] count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." Id. at 977. "Basic to criminal law principles is the concept that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses." United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (quotation omitted). If conspiracy to commit torture and the substantive offense of torture are separate offenses, then a § 924(c) charge that relies on conspiracy must likewise be distinct from a § 924(c) charge that relies on torture. By listing these two offenses in the same Count, Mr. Belfast's indictment commits the error Schlei was concerned about.

"A duplicitous count poses three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." Schlei, 122 F.3d at 977. Mr. Belfast's case demonstrates the dangers that lurk. Mr. Belfast may indeed have used a gun at some point in time during the conspiracy, but never during the substantive torture offense. However, "because the jurors have two crimes to consider in a single count, they may convict [on the § 924(c) offense] without reaching a unanimous agreement on [which crime Mr. Belfast "used" a firearm during]." § 142 Misjoinder, Duplicity, and Multiplicity, 1A Fed. Prac. &

Proc. Crim. § 142 (4th ed.). A general verdict of guilty "will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other. This uncertainty could prejudice defendant in sentencing [and] appellate review." Id.

Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his § 924(c) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Mr. Belfast's indictment is written, all we can do is guess. We simply cannot know on which companion conviction the jury relied.

II.

It may well be true that Congress intended torture (and conspiracy to commit torture) to count as crimes of violence under § 924(c). And, as I've said, these crimes certainly meet the § 924(c) residual clause definition because they ""involve[] a substantial risk that physical force against the person or property of another may be used." But, assuming Johnson applies to § 924(c), we are now faced with applying a statutory definition half of which is unconstitutional. The Supreme Court has told us how to determine whether a crime meets the "elements clause" definition— "by look[ing] only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." Descamps v. United States, 133 S. Ct. 2276,

2287 (2013) (quotation omitted). In so doing, we "must presume that the conviction rested upon nothing more than the least of the acts criminalized." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2011) (quotation omitted).

On its face, whether torture or conspiracy to commit torture is a "crime of violence" may seem easy. And, when the residual clause still operated as a catch-all, it certainly was. But, by denying this application, the majority has prevented a district court from looking into this question for the first time and denied us, a Court of Appeals, the opportunity to review the district court's resolution. I respectfully dissent.

Roy M Belfast Jr 76556-004
U.S.P. LEE
P.O. Box 305
Jonesville, Va 24263

Chief Judge for the Southern District of
Florida ; Wilkie D. Ferguson U.S. Courthouse
400 North Miami Ave.
Miami, Florida 33128

"LEGAL MAIL"

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

CERTIFIED MAIL™

7012 1010 0002 4525 5287

JONESVILLE, VA JUL 12 2017 24263

PURPLE HEART FOREVER USA

U. S. PENITENTIARY - LEE COUNTY
PO Box 900 - Jonesville, VA 24263
DATE 7-12-17

"Special / Legal Mail"

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosed to the above address.